IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
CIVIL DIVISION

LORENZO UZAREK,

    Plaintiff,

v.                                                         CASE NO.: _____

NUVASIVE, INC.,
A foreign corporation,

    Defendant.

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, LORENZO UZAREK, by and through the undersigned counsel, hereby sues Defendant, NUVASIVE, INC., a foreign corporation (hereinafter "NUVASIVE") and alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for damages in excess of thirty thousand dollars ($30,000.00) exclusive of interest, costs and attorneys' fees.

2. At all relevant times LORENZO UZAREK was a resident of Pasco County, Florida.

3. At all relevant times, NUVASIVE is and was a Delaware corporation with its principal place of business located at 7475 Lusk Blvd. San Diego, CA 92121.

4. Service of Process on NUVASIVE can be made at its designated registered agent Cogency Global, Inc. 115 North Calhoun Street, Suite 4, Tallahassee, FL 32301.

5. NUVASIVE at all relevant times engaged in substantial and not isolated activities in the State of Florida, including Pasco County, and did so during all relevant time periods by

selling, distributing, marketing, advertising, promoting and/or selling spinal surgery products in the State of Florida so that medical professionals can perform spinal surgeries.

6. NUVASIVE derives substantial revenue from its sales and distribution of spinal surgery products within the State of Florida.

7. Additionally, NUVASIVE submitted itself to the jurisdiction of this Honorable Court by, doing personally or through its agents, at all times material to this cause of action, the following acts:

   a. Conducting and engaging in substantial business and other activities in Florida by selling its products to persons, firms, or corporations in this state via its distributors, wholesalers, dealers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce or trade;

   b. Committing a tortious act within this state by selling and delivering defective products, including the Subject Rod and Screw, to persons, firms, or corporations in this state via its distributors, dealers, wholesalers, and brokers. Such products were used by consumers in Florida in the ordinary course of commerce and trade;

   c. Causing injury to persons in Florida, including Plaintiff. At or about the time said injuries occurred, NUVASIVE engaged in solicitation activities in Florida to promote the sale, consumption, and use of its products; and/or

   d. Selling and delivering defective products, including the Subject Rod and Screw, with knowledge or reason to foresee that its products would be shipped in interstate commerce and would reach the market of Florida users or consumers.

8. Venue is proper in this county because the incident giving rise to this lawsuit occurred in Pasco County and/or one or more Defendants have its principal place of business located in Pasco County.

## GENERAL ALLEGATIONS

9. On September 23, 2016, LORENZO UZAREK was surgically implanted with the Subject Rod and Screw during a L5-S1 Anterior Lumbar Interbody Fusion at Florida Hospital Tampa by Dr. Armen Deukmedjian, MD.

10. On some date prior to September 23, 2016, the Subject Rod and Screw used in LORENZO UZAREK'S surgery (herein referred to as "Subject Rod", "Subject Screw" or "Subject Rod and Screw") was designed, manufactured, built, imported, marketed, advertised, sold, distributed, labeled, and/or packaged by NUVASIVE.

11. At the time the Subject Rod and Screw was used by medical personnel at FLORIDA HOSPITAL TAMPA, the Subject Rod and Screw was in substantially the same condition as it was when it left the possession and control of NUVASIVE.

12. Sometime before October 4, 2017, LORENZO UZAREK began to feel immense pain and discomfort in his lower back.

13. By the end of 2017, LORENZO UZAREK'S back pain had gotten worse.

14. On February 15, 2018, LORENZO UZAREK presented to Dr. Donald Smith, MD at the University of South Florida Department of Neurosurgery for consultation regarding placement of a spinal stimulator to help relieve his increasing back pain.

15. During the consultation, on February 15, 2018, it was discovered that the Subject Rod had broken.

16. As a result, LORENZO UZAREK was forced to undergo an additional painful surgery, causing additional injury to LORENZO UZAREK to remove the Subject Rod and Screw from his body, resulting in permanent injuries.

17. On January 22, 2019, the Subject Rod and Screw were surgically removed from LORENZO UZAREK'S back.

18. At all material times, the Subject Rod and Screw were being used exactly as intended and accordance with NUVASIVE'S instructions, directions, and procedures by both the

3

medical personnel at FLORIDA HOSPITAL TAMPA during the surgical implant and at all times thereafter by LORENZO UZAREK.

19. LORENZO UZAREK'S injuries were caused by the defective design, manufacture, construction, unreasonably dangerous character of the Subject Rod and Screw, and lack of warning that the Subject Rod and Screw would prematurely break during normal and foreseeable use and activities or combination of all the above.

## COUNT I—STRICT LIABILITY AGAINST NUVASIVE
### Defective Design

20. Paragraphs 1 through 19 are incorporated by reference as if stated fully herein.

21. The Subject Rod and Screw contained an unsafe, defective, and inherently dangerous condition due to the propensity of the Subject Rod and Screw to break during normal and foreseeable use.

22. The Subject Rod and Screw were defective in their design and unreasonably dangerous to ultimate recipients when they left the hands of NUVASIVE, in the following manner.

   a. The Subject Rod and Screw failed to operate as safely as an ordinary consumer would expect.

   b. The Subject Rod and Screw were designed to be built with substandard materials, inappropriate for the specific purpose for which the Subject Rod and Screw were intended, advertised, and marketed.

   c. The Subject Rod and Screw were designed to be built with materials that were unable to withstand the pressure, forces, movements, and/or applications for which the Subject Rod and Screw were intended, advertised, and marketed.

   d. The Subject Rod and Screw were designed in such a way that failure of the Subject Rod and Screw was likely to occur, and did in fact occur, when used under normal and foreseeable conditions. Specifically, the Subject Rod and Screw were designed in such a way that they would break and separate into multiple parts inside the body of the patient causing internal injury.

   e. The Subject Rod and Screw were designed, sold and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Subject Rod and

4

       Screw had an unreasonable propensity to fail during normal and foreseeable use rendering the Subject Rod and Screw dangerous to users.

    f. The Subject Rod and Screw were defective in their design and warnings, in that they failed to operate as marketed and advertised and failed to alert medical providers and patients to the hazardous conditions described herein.

    g. The Subject Rod and Screw were defective due to inadequate, or the absence of, warnings or instructions, including warning stickers, placards, or proper documentation to alert owners and other persons using the Subject Rod and Screw of the hazardous conditions described herein.

    h. The Subject Rod and Screw deviated from product specifications, posing a serious risk that it could fail; therefore, giving rise to physical injury, pain and suffering, debilitation with the attendant risks of complications and death from those injuries; and

    i. The Subject Rod and Screw posed a risk of danger inherent in the design which outweighed the benefits of that design.

23. For the reasons set forth above, the Subject Rod and Screw were unreasonably dangerous to foreseeable users, including LORENZO UZAREK.

24. NUVASIVE either knew or should have known of the design defects in the Subject Rod and Screw or failed to conduct proper and adequate pre-market testing and also failed to follow quality assurance protocols for the Subject Rod and Screw which would have revealed the existence of the design defects.

25. The Subject Rod and Screw's unsafe, defective, and inherently dangerous design condition described above was a direct and proximate cause of injury to LORENZO UZAREK.

26. NUVASIVE placed the Subject Rod and Screw on the market with knowledge that they would be used by purchasers without inspection for defects and dangers.

27. NUVASIVE knew or should have known that the medical procedures in which the Subject Rod and Screw would be used would render the patient incapable of inspecting the Subject Rod and Screw for defects and dangers.

5

28. As a direct and proximate result of the foregoing conduct of NUVASIVE, LORENZO UZAREK suffered incidental and consequential damages, including bodily injury, resulting in pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages, and medical expenses for treatment and care, past, present, and future. Said losses, injuries, and expenses are either permanent or continuing in nature and LORENZO UZAREK will continue to suffer same in the future.

**WHEREFORE**, Plaintiff, LORENZO UZAREK, demands judgment against Defendant, NUVASIVE, for damages, costs, interest and such other relief as this Court deems just.

## COUNT II—STRICT LIABILTY AGAINST NUVASIVE
### Defective Manufacture

29. Paragraphs 1 through 19 are incorporated by reference as if stated fully herein.

30. The Subject Rod and Screw contained an unsafe, defective, and inherently dangerous condition due to the propensity of the Subject Rod and Screw to break during normal and foreseeable use.

31. The Subject Rod and Screw were defective in their manufacture and unreasonably dangerous to ultimate recipients when they left the hands of NUVASIVE, in the following manner.

   a. The Subject Rod and Screw failed to operate as safely as an ordinary consumer would expect.

   b. The Subject Rod and Screw were manufactured with substandard materials, inappropriate for the specific purpose for which the Subject Rod and Screw was intended, advertised, and marketed.

   c. The Subject Rod and Screw were manufactured with materials that were unable to withstand the pressure, forces, movements, and/or applications for which the Subject Rod and Screw were intended, advertised, and marketed.

   d. The Subject Rod and Screw were manufactured in such a way that failure of the Subject Rod and Screw was likely to occur, and did in fact, occur when used under normal and foreseeable conditions. Specifically, the Subject Rod and

6

    Screw were manufactured in such a way that it would break and separate into multiple parts inside the body of the patient causing internal injury.

    e. The Subject Rod and Screw were manufactured, sold and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Subject Rod and Screw had an unreasonable propensity to fail during normal and foreseeable use rendering the Subject Rod and Screw dangerous to users.

    f. The Subject Rod and Screw were defective in its manufacture and warnings, in that it failed to operate as marketed and advertised and failed to alert medical providers and patients to the hazardous conditions described herein.

    g. The Subject Rod and Screw were defective due to inadequate, or the absence of, warnings or instructions, including warning stickers, placards, or proper documentation to alert owners and other persons using the Subject Rod and Screw of the hazardous conditions described herein.

    h. The Subject Rod and Screw deviated from product specifications, posing a serious risk that it could fail; therefore, giving rise to physical injury, pain and suffering, debilitation with the attendant risks of complications and death from those injuries; and

    i. The Subject Rod and Screw posed a risk of danger inherent in the manufacture which outweighed the benefits of that design.

32. For the reasons set forth above, the Subject Rod and Screw were unreasonably dangerous to foreseeable users, including LORENZO UZAREK.

33. NUVASIVE knew or should have known of the manufacturing defects in the Subject Rod and Screw or failed to conduct proper and adequate pre-market testing and also failed to follow quality assurance protocols for the Subject Rod and Screw which would have revealed the existence of the manufacturing defects.

34. The Subject Rod and Screw's unsafe, defective, and inherently dangerous condition described above was a direct and proximate cause of injury to LORENZO UZAREK.

35. NUVASIVE placed the Subject Rod and Screw on the market with knowledge that it would be used by purchasers without inspection for defects and dangers.

7

36. NUVASIVE knew or should have known that the medical procedures in which the Subject Rod and Screw would be used would render the patient incapable of inspecting the Subject Rod and Screw for defects and dangers.

37. As a direct and proximate result of the foregoing conduct of NUVASIVE, LORENZO UZAREK suffered incidental and consequential damages, including bodily injury, resulting in pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages, and medical expenses for treatment and care, past, present, and future. Said losses, injuries, and expenses are either permanent or continuing in nature and LORENZO UZAREK will continue to suffer same in the future.

**WHEREFORE**, Plaintiff, LORENZO UZAREK, demands judgment against Defendant, NUVASIVE, for damages, costs, interest and such other relief as this Court deems just.

## COUNT III—NEGLIGENCE AGAINST NUVASIVE

38. Paragraphs 1 through 19 are incorporated by reference as if stated fully herein.

39. <u>DUTY</u>: Defendant, NUVASIVE, had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, importing, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Subject Rod and Screw into the stream of commerce, including a duty to assure that the Subject Rod and Screw would not cause those who received the Subject Rod and Screw to suffer adverse harmful effects.

40. <u>BREACH</u>: Defendant, NUVASIVE, failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, importing, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Subject Rod and Screw into interstate commerce in that Defendant, NUVASIVE, knew or should have known that those individuals that

8

received the Subject Rod and Screw, including patients like LORENZO UZAREK, were at risk for suffering harmful effects from the Subject Rod and Screw breaking, including but not limited to severe and personal injuries and/or death.

41.   The negligence of Defendant, NUVASIVE, its agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

   a. Negligently designing the Subject Rod and Screw in a manner which was dangerous to those patients in which the Subject Rod and Screw were used.

   b. Designing, manufacturing, supplying, importing, producing, distributing, creating, and/or promoting the Subject Rod and Screw without adequately, sufficiently, or thoroughly testing it.

   c. Not conducting sufficient testing programs to determine whether the aforesaid Subject Rod and Screw were safe for use.

   d. Designing, manufacturing, supplying, importing, producing, distributing, creating and/or promoting the Subject Rod and Screw when NUVASIVE knew or should have known that the Subject Rod and Screw were unsafe and unfit for use by reason of its propensity to break apart inside the patient's body during normal and foreseeable use.

   e. Selling, importing, distributing, and/or providing the Subject Rod and Screw without making proper and sufficient tests to determine the reliability of the Subject Rod and Screw to perform as expected and advertised.

   f. Negligently failing to adequately and correctly warn medical personnel and patients, including LORENZO UZAREK, of the dangers of using the Subject Rod and Screw.

   g. Negligently failing to recall the dangerous and defective Subject Rod and Screw at the earliest date that it became known that the Subject Rod and Screw were, in fact, dangerous and defective.

   h. Failing to provide adequate instructions regarding safety precautions to be observed by users who would reasonably and foreseeably use the Subject Rod and Screw.

   i. Negligently advertising and recommending the use of the Subject Rod and Screw despite the fact that NUVASIVE knew or should have known of the Subject Rod and Screw's dangerous propensities to fail and break apart while inside the patient during normal and foreseeable use.

9

  j. Negligently representing that the Subject Rod and Screw were safe for use for its intended purpose, when, in fact, it was unsafe.

  k. Negligently manufacturing, importing, selling, distributing and/or marketing the Subject Rod and Screw in a manner which was dangerous to those patients who received them.

  l. Negligently assembling the Subject Rod and Screw in a manner which was dangerous to those patients who received them.

  m. NUVASIVE, under-reported, concealed important relevant information, underestimated and downplayed the serious danger of the Subject Rod and Screw.

42. NUVASIVE knew or should have known that patients such as LORENZO UZAREK would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of NUVASIVE'S failure to exercise ordinary care, as set forth above.

43. <u>CAUSATION:</u> The negligence described above directly and proximately caused the injuries sustained by LORENZO UZAREK in that it directly, and in natural and continuous sequence, produced or contributed substantially to his injuries.

44. <u>DAMAGES:</u> As a direct and proximate result of the negligence described above by NUVASIVE, LORENZO UZAREK suffered incidental and consequential damages, including bodily injury, resulting in pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages, and medical expenses for treatment and care, past, present, and future. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

 **WHEREFORE**, Plaintiff, LORENZO UZAREK, demands judgment against Defendant, NUVASIVE, for damages, costs, interest and such other relief as this Court deems just.

**Jury Demand**

Plaintiff hereby demand a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiffs, LORENZO UZAREK, pray that he may have and recover judgment against Defendant, NUVASIVE, the following: (a) pre-judgment interest as allowed by law; (b) post-judgment interest as allowed by law; (c) actual damages; (d) costs and expenses of suit; and (e) any other such relief, at law or equity, to which Plaintiffs may be justly entitled.

Respectfully submitted this 14th day of June 2020.

/s/ William L. Clark
Shane A. Newlands, ESQUIRE
Florida Bar No.: 116908
William Lee Clark, ESQUIRE
Florida Bar No.: 089785
**NEWLANDS & CLARK**
11161 East State Road 70
Suite 110-168
Lakewood Ranch, FL 34202
Phone: (813) 438-3435
Phone: (813) 783-4900
Primary Email: shane@newlandsclark.com
Primary Email: lee@newlandsclark.com

*Counsel for Plaintiff*

11